# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREDDY PAZ PEREZ, *et al.*, | |
| Plaintiffs, | Civil Action No. 12-cv-0697 (BAH) |
| v. | Judge Beryl A. Howell |
| C.R. CALDERON CONSTRUCTION, INC., *et al.* | |
| Defendants. | |

## MEMORANDUM AND ORDER

Thirteen plaintiffs have filed this lawsuit to recover wages allegedly owed for their drywall work performed at various times over a seven month period, as part of the renovation of the H. Carl Moultrie Courthouse (the "Courthouse") in Washington, D.C., located at 410 E Street, N.W., Washington, D.C, 20001. First Am. Compl. ("FAC") ¶¶ 1, 15, ECF No. 40. The plaintiffs assert six claims for violations of the D.C. Wage Payment and Collection Act ("DCWPCA"), Fair Labor Standards Act ("FLSA"), the D.C. Minimum Wage Revision Act ("DCMWRA"), and common-law breach of contract against the first tier subcontractor and its owners[1] (collectively the "CRC defendants"), *id.* at ¶ 2, the drywall subcontractor and its owner (collectively the "JCI defendants"),[2] and Travelers Casualty & Surety Company of America ("Travelers"), which served as surety on a payment bond with the CRC defendants "for the

---

[1] The first tier subcontractor is the defendant C.R. Calderon Construction, Inc. ("CRC"), which is owned and managed by the defendants Carlos Calderon and Ana Calderon. FAC at ¶¶ 8, 9.
[2] The JCI defendants are Jacinto Construction, Inc. ("JCI") and Jacinto E. Cespedes, who is the President or Chief Executive Officer and majority owner of JCI. FAC at ¶ 7.

1

benefit of all persons providing material and labor," *id*., in the performance of the renovation. Pending before the Court are three motions: (1) the plaintiffs' Motion for Partial Summary Judgment ("Pls.' Mot."), ECF No. 96; (2) the CRC defendants' Renewed Motion for Summary Judgment ("CRC Renewed Mot."), ECF No. 99; and (3) the CRC defendants' Motion for Summary Judgment regarding their Cross-Claims against the JCI defendants ("CRC Cross-Claims Mot."), ECF No. 95. For the following reasons, the motions are denied.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The prime contractor, Whiting-Turner Contracting Company ("Whiting-Turner"), entered into a subcontract, on January 7, 2011, with defendant C.R. Calderon Construction, Inc. ("CRC"), for CRC to perform drywall and ceiling construction work on the renovation of the Courthouse. FAC ¶ 2; Pls.' Statement of Material Facts Not In Dispute ("Pls.' SMF") ¶ 3, ECF No. 96-1. As part of the subcontract agreement, CRC "provided a payment bond to Whiting Turner guaranteed by Travelers, which was acting as a surety." *Id.* CRC then entered into "two contracts with JCI as vehicles for obtaining the labor necessary to complete its portion of the work, one entered into on April 11, 2011, and a second entered into on June 16, 2011." Pls.' SMF ¶ 7; *see* FAC ¶¶ 15, 16. According to the plaintiffs, each of them worked over 40 hours per week at various times, during their employment, but "did not receive any pay [for some weeks] or adequate pay" for work performed, including overtime, during this period. FAC ¶ 25. Consequently, they have brought suit to recover unpaid wages, of "approximately $170,487.32, and an additional equivalent amount of the unpaid wages as liquidated damages, for a total of

$340, 974.64" under the DCWPCA and FLSA, as well as other damages, attorneys' fees, costs, and expenses.[3] FAC ¶¶ 50, 55, 57, 63, 72, 77.

The parties have engaged in vigorous motions practice since the commencement of this lawsuit and, as a result, this case has already continued for over three times as long as the seven month period for which unpaid wages are sought. The Court has already denied three prior dispositive motions: (1) Travelers' Motion to Dismiss the First Amended Complaint or, in the alternative, for Summary Judgment, ECF No. 43;[4] (2) the plaintiffs' Motion for Partial Summary Judgment and/or Determination of Question of Law on Count VI of the FAC against Travelers, ECF No. 45;[5] and (3) the CRC Defendants' Motion for Summary Judgment, ECF No. 49.[6] The Court is now presented with three additional dispositive motions: two motions for summary judgment by the CRC defendants, ECF Nos. 99 and 95, and a motion for partial summary judgment by the plaintiffs, ECF No. 96.

For the following reasons, neither the plaintiffs nor the CRC defendants have satisfied their burden of showing the absence of genuine issues of material fact entitling them to summary judgment in their favor.

---

[3] The plaintiffs seek the same amount of "approximately $170,487.32, and an additional equivalent amount of the unpaid wages as liquidated damages, for a total of $340, 974.64" as well as "attorneys' fees, costs, and expenses" on a breach of contract theory against Travelers as the surety for the payment bond. FAC ¶ 77.

[4] Travelers' motion to dismiss was denied because its liability, if any, as surety for the payment bond, rests on the liability of CRC and, consequently, may not be resolved until CRC's liability is determined. Order, dated July 10, 2013 ("July 10, 2013 Order"), at 10-12, ECF No. 58.

[5] The plaintiffs motion for partial summary judgment on Count VI of the FAC against Travelers was denied because "[t]he plaintiffs [had] certainly not 'show[n]' that there is no genuine dispute as to' whether Calderon had an obligation to pay the plaintiffs for their work, which is a 'material fact' with regard to both Calderon's and Travelers' liability." July 10, 2013 Order, at 11.

[6] The CRC defendants' motion for summary judgment was denied because the plaintiffs had raised a genuine issue of material fact as to whether the CRC defendants were the actual employers and, therefore, liable for the plaintiffs' unpaid wages. Order, dated November 15, 2013, at 2, ECF No. 74.

## II. DISCUSSION

Since all three of the pending motions seek summary judgment, the Court begins by setting out the applicable legal standard for evaluating whether summary disposition is appropriate. Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (per curiam); *Anderson v. Liberty Lobby, Inc.* (*Anderson*), 477 U.S. 242, 255 (1986). As the Supreme Court recently stressed, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S.Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249). When a court "fail[s] to credit evidence" presented by the nonmoving party "that contradict[s] some of [the moving party's] key factual conclusions, the court improperly weigh[s] the evidence and resolve[s] disputed issues in favor of the moving party." *Id.* (internal quotations and citations omitted).

In applying this legal standard to this round of motions practice, the Court notes at the outset that, despite raising material issues of fact in response to each of the pending summary

4

judgment motions, both the CRC and JCI defendants apparently concede that the plaintiffs performed work for which they were not paid, in violation of established local and federal laws. *See* CRC Cross-Claims Mot. at 2 ("[JCI], as an independent contractor, agreed . . . to indemnify [CRC] for any and all amounts due for its admitted failure to pay its employees"); JCI Defs.' Opp'n to CRC Cross-Claims Mot. ("JCI Opp'n"), at 8, ECF No. 100 (alleging that "[CRC] used JCI, Jacinto Cespedes, the thirteen plaintiffs and ten other workers not named plaintiffs, to perform[] the work Calderon contracted with Whiting-Turner to do"). The dispute continues, however, with respect to who is liable for, and the amount due of, the unpaid wages to the plaintiffs. For the reasons set forth below, genuine issues of material fact exist with regards to these issues and, therefore, summary resolution is precluded. The plaintiffs' motion and the CRC defendants' cross-motion will be addressed first, followed by a discussion of the CRC defendants' motion for summary judgment on its cross-claims against the JCI defendants.

### A. The Plaintiffs' Motion for Partial Summary Judgment and the CRC Defendants' Renewed Motion for Summary Judgment

The plaintiffs' Motion for Partial Summary Judgment requests three specific findings. Pls.' Mot. at 1. First, the plaintiffs request a finding that "C.R. Calderon Construction, Carlos R. Construction, Jacinto Construction, Inc., and Jacinto Cespedes each jointly employed Plaintiffs and are therefore liable for any violations of Plaintiffs' rights under the [DCWPCA, DCMWRA, and FLSA]." *Id*. The CRC defendants, on the other hand, not only oppose such a finding but demand that the opposite conclusion be drawn: namely that CRC was not a joint employer of the plaintiffs. CRC Defs.' Renewed Mot. at 2 ("As will be argued in the Memorandum, the facts in this case do not meet the legal requirements to support a finding of joint employment.").

The plaintiffs counter that CRC's demand must fail because: (1) "CRC had the de facto power to hire and fire plaintiffs," Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem."), at 6, ECF No. 96-

2; (2) "CRC supervised and controlled employee work schedules, the manner in which work was performed, the conditions of their employment, and the work that [the plaintiffs] did," *id*. at 8; and (3) "CRC determined the rate and method of payment," *id.* at 9. The CRC defendants dispute these asserted facts contending that CRC cannot be considered a joint employer as "[CRC] had no contact with [JCI] prior to his Project, no contact after the project, and no direct control of [JCI's] employees," CRC Defs.' Renewed Mot. at 5, and "[JCI] hired and fired and would not take direction from [CRC] on this point," CRC Resp. to Pl.'s SMF at ¶ I.F.1., ECF No. 99-1. At the same time, the CRC defendants admit that when JCI was falling behind "[CRC] gave [Jacinto Cespedes] the names of three workers," which presumably was for the purpose of JCI obtaining additional employees. *Id.* These disputed facts about CRC's role in hiring the plaintiffs and/or the control, if any, CRC exercised over the plaintiffs in an effort to complete the construction project are material to the issue of whether CRC should be considered a joint employer. Consequently, genuine issues of material fact exist precluding summary judgment in favor of either the plaintiffs or the CRC defendants on the issue of whether CRC is liable as a joint employer of the plaintiffs.

Second, the plaintiffs request a judicial determination that "the wage rates to which Plaintiffs are entitled are $33.38 per hour for each hour up to 40 hours in a work week and $39.57 for each hour over 40 that they worked in a particular work week." Pls.' Mot. at 1. The exact wage rate to which the plaintiffs are entitled, however, also appears to hinge on material facts still in dispute. The plaintiffs even acknowledge this continuing dispute, stating that "[t]he Calderon Defendants argue that several of the Plaintiffs were classified as finishers, which is a classification requiring lesser pay than carpenter," and "also assert as a fact that there was no reason why Jacinto Cespedes could not change the classification rate paid for some of the

6

Plaintiffs from the carpenter rate of $33.38 per hour to the skilled laborer rate of $26.68 per hour." Pls.' Reply to CRC Defs.' Resp. to Pls.' SMF ("Pl.'s Reply SMF") at 1, ECF 104-1. The material factual disputes surrounding the rate of pay owed to the plaintiffs are further complicated by the plaintiffs' proffer that "[w]hile [they] agree that four of the Plaintiffs . . . performed finishing work . . . the wage rate paid to finishers by [JCI] was the same as that of carpenters" and "neither [JCI] nor [CRC] attempted to alter the classification of those four Plaintiffs from carpenters to finishers." Pls.' Reply SMF at 1. Indeed, the plaintiffs allege that Jacinto Cespedes "testified that he promised to pay all of the Plaintiffs, including the finishers, a base rate of $33.38 per hour, the same rate as carpenters." *Id.* at 2. In other words, factual disputes continue about the skill level required for the jobs assigned to the plaintiffs and the rate of pay to which they were entitled based on the jobs they actually performed. Thus, the rate per hour to which the plaintiffs are entitled is plainly disputed among the parties and, further, appears dependent upon credibility determinations as to what was promised by Jacinto Cespedes and understood by the plaintiffs, which are quintessential determinations for the fact finder.

Finally, in a supplemental filing, which the Court granted leave to file, *see* Minute Order, dated July 31, 2014, the plaintiffs ask for additional findings that: (1) defendant CRC is an "enterprise engaged in commerce and a covered entity under the Fair Labor Standard Act;" and (2) "Plaintiffs 'engaged in commerce or the production of goods for commerce' during the Project and are therefore individually covered by the FLSA, independently making both JCI and CRC liable to Plaintiffs under the FLSA and subject to the FLSA's provisions in this case." Pls.' Supp. Mem. in Supp. of Mot. for Partial Summ. J. ("Pls.' Supp. Mem.") at 1, ECF No. 98. As support for the finding regarding CRC qualifying as an enterprise under the FLSA, the plaintiffs rely on a stipulation with CRC confirming that the company's annual gross volume of sales

during the relevant time period was never less than $500,000 and that some, if not all of the materials used for work on the Courthouse renovation moved through interstate commerce. Stipulation at ¶¶ 1, 2, ECF No. 98-1.[7] Both the status of CRC as an enterprise or the plaintiffs' individual coverage under the FLSA begs the question of whether this company functioned as the employer of the plaintiffs. In view of the genuine factual issues in material dispute as to whether CRC was effectively the employer of the plaintiffs or which of the defendants are liable for the wages owed to the plaintiffs, it is premature to make a finding that CRC (and/or JCI) meet the definition for enterprise liability under the FLSA or other findings as a matter of law regarding the plaintiffs coverage under the FLSA. Pls.' Mot. at 1.

Accordingly, the plaintiffs are not entitled to partial summary judgment and the CRC defendants are certainly not entitled to judgment as a matter of law with respect to whether they are joint employers of the plaintiffs.

### B. The CRC Defendants' Motion for Summary Judgment on Cross-Claims Against JCI Defendants

In addition to seeking summary judgment in their favor with respect to the plaintiffs' claims, the CRC defendants also move for entry of an order granting summary judgment against the JCI defendants for: (1) "breach of contract;" (2) "fraudulent misrepresentation;" and (3) "indemnification for any and all amounts found due to the Plaintiffs from [CRC], plus costs, expenses and attorney fees." CRC Cross-Claims Mot., Proposed Order, at 2, ECF No. 95-1. First, with respect to the breach of contract and fraudulent misrepresentation claims, the JCI defendants have raised a number of factual issues regarding the negotiation, creation and

---

[7] To the extent that the plaintiffs' motion seeks a finding regarding JCI, the plaintiffs submit no facts to contravene JCI's proffer that JCI's "gross revenue has never even come close to the $500,000 gross revenue" required for FLSA enterprise liability. JCI Defs.' Opp'n to Pl.s' Mot. for Summ. J. at 2, ECF No. 100; Aff. of Jacinto Cespedes, ECF No. 101-3.

performance of the CRC/ JCI sub-subcontracts and these issues raise material disputes about which party is responsible for any contract breach. For example, the JCI Defendants raise issues regarding the enforceability of the two subcontracts between CRC and JCI, claiming that they were "unconscionable, unfair contract[s]" that were "negotiated with and exploited a person of limited education, rudimentary business acumen, and no experience entering a construction project, let alone a project of this size and scope." JCI Opp'n at 27; *id.* at 5 (noting that Jacinto Cespedes, who negotiated the contract with CRC "has only minimal oral or reading or writing proficiency in English"). As evidence of this unfairness and exploitation of Jacinto Cespedes, the JCI defendants point out the comparison between the amounts to be paid to JCI and to CRC for the same work: specifically, the total payment due from CRC to JCI for the subcontract work "under the two contracts was $230,499.10," plus "additional amounts for change orders and overtime hours worked by the Plaintiffs and the other workers," while "Whiting Turner agreed to pay CRC $929,639.00 for the same work," or almost four times as much as JCI was to be paid. *Id.* at 14. In addition, the sub-subcontracts allegedly "do not contain [] federally required clauses." *Id.* at 9. Finally, a Department of Labor employee allegedly "told Jacinto Cespedes [that] JCI's contract with [CRC] was invalid because he was not advised of or required to obtain a pay bond insurance, because JCI did not have a net gross income of $500,000, and because no bidding took place for the contract." *Id.* at 11. These allegations create genuine issues of material fact with respect to the enforceability of the sub-subcontracts with JCI and preclude summary disposition in favor of CRC.

Finally, the principle thrust of the CRC defendants' motion for summary judgment on the cross-claims against the JCI defendants is that, due to a one-line indemnification clause contained in the two sub-subcontracts between CRC and JCI, the latter company is obligated to

9

indemnify CRC "for any and all amount due for its admitted failure to pay its employees." CRC Cross-Claims Mot. at 2. This indemnification clause states, in full, that: "Independent contractor shall indemnify and hold harmless the company from any claim, demand, loss, liability, damage, or expense arising in any way from the independent contractor." *Id.* Given the substantial issues raised about the enforceability of the sub-subcontracts, however, granting summary judgment on the basis of this indemnification clause would be inappropriate. If the sub-subcontracts are invalid, then this indemnification clause is likewise unenforceable. This highlights the need to resolve the genuine issues of material fact surrounding the validity, or lack thereof, of the sub-subcontracts before any judicial determinations may be made about the meaning, scope and application of the indemnification clauses.[8]

Accordingly, in view of the foregoing, it is hereby:

**ORDERED** that the plaintiffs' Motion for Partial Summary Judgment, ECF No. 96, is DENIED; and it is further;

**ORDERED** that the CRC defendants' Renewed Motion for Summary Judgment, ECF No. 99, is DENIED; and it is further;

**ORDERED** that the CRC defendants' Motion for Summary Judgment regarding their Cross-Claim against the JCI defendants, ECF No. 95, is DENIED; and it is further

**ORDERED** that the following SCHEDULING ORDER shall control further proceedings in this matter: The parties shall appear for a pre-trial conference on **Friday, June 5, 2015,** in Courtroom 15 at 10:00 a.m. The parties shall submit the pre-trial statement required by this

---

[8] To the extent that the CRC defendants are trying to assert that the indemnification clauses require JCI to indemnify CRC not only for JCI's own negligent action but also any negligent actions of CRC, that allegation would fail as a matter of law. *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993) ("If the [C]ourt determines that the contract is ambiguous on the issue of indemnifying the negligence of the indemnitee, then rather than the interpretation becoming a jury question, a particular result is required, . . . there is no indemnification for the indemnitee's own negligence.").

Court's Standing Order, ECF No. 3, by **Wednesday, May 20, 2015**. All *motions in limine* shall be fully briefed at the time the pre-trial statement is filed. Trial in this matter shall begin **Monday, June 15, 2015**.

Date: March 30, 2015

_____
BERYL A. HOWELL
United States District Judge